# Exhibit A

# Plaintiff's Complaint and Initial Appearance Fee Disclosure

Electronically Filed
11/9/2019 7:09 PM
Steven D. Grierson
CLERK OF THE COURT

JAMES P. KEMP, ESQ.
Nevada Bar No.: 6375
VICTORIA L. NEAL, ESQ.
Nevada Bar No.: 13382
KEMP & KEMP
7435 W. Azure Drive, Ste 110
Las Vegas, NV 89130
702-258-1183 ph./702-258-6983 fax
jp@kemp-attorneys.com
vneal@kemp-attorneys.com

*Attorneys for Plaintiff
Marilyn Misa-White*

CASE NO: A-19-805177-C
Department 24

## DISTRICT COURT

## CLARK COUNTY, NEVADA
***

| | |
|---|---|
| MARILYN MISA-WHITE,<br><br>               Plaintiff,<br><br>vs.<br><br>SOUTHERN HILLS MEDICAL CENTER,<br>LLC, a Nevada Limited Liability Company;<br>Does I-X; Roe Corporations I-X,<br><br>               Defendants. | Case No.:<br>Dept. No.:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>Arbitration Exemption: action seeking equitable or extraordinary relief. |

COMES NOW Plaintiff, MARILYN MISA-WHITE, by and through her counsel, James P. Kemp, Esq. and Victoria L. Neal, Esq., of KEMP & KEMP, ATTORNEYS AT LAW, and states and alleges causes of action against Defendants, and each of them, as follows:

## JURISDICTION

1. This is a civil action for damages brought by MARILYN MISA-WHITE (herein "Plaintiff") against her former employer, SOUTHERN HILLS MEDICAL CENTER, LLC (herein "Defendant"), to redress 1) its violations of the Family and Medical Leave Act of 1993, as amended (herein

1

"FMLA"), 29 U.S.C. § 2601 *et seq.*; and, 2) Retaliatory Discharge in Violation of Public Policy (Workers' Compensation Retaliation).

2. Plaintiff is resident of Clark County, Nevada and was at all relevant times mentioned herein an employee at the Defendant's place of business in Clark County, Nevada.

3. Defendant, SOUTHERN HILLS MEDICAL CENTER, LLC, doing business as Southern Hills Hospital and Medical Center, is a Domestic Limited Liability Company formed an authorized under the law of the State of Nevada. This is a foreign Corporation registered with the Nevada Secretary of State to do business in the State of Nevada.

4. Defendant, SOUTHERN HILLS MEDICAL CENTER, LLC, engages in an industry affecting commerce and employed more than 500 employees in the two calendar years preceding the events in question.

5. Defendant, SOUTHERN HILLS MEDICAL CENTER, LLC, had more than 50 employees within a 75 mile radius of the location where Plaintiff was employed in Clark County, Nevada and is, therefore, an employer for purposes of the Family and Medical Leave Act of 1993, as amended.

6. Plaintiff is unaware of the true names and capacities whether individuals, corporations, associates, or otherwise of Defendants DOE INDIVIDUALS I through X and ROE BUSINESS ENTITIES I through X, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff is informed and believes and thereupon alleges that the Defendants, and each of them, are in some manner responsible and liable for the acts and damages alleged in this Complaint.

7. Defendants, as a limited liability company (herein "LLC"), can only operate by and through its agents, directors, officers, managers, supervisors, and employees. Therefore, wherever the identifying word "Defendant" is used herein, it refers to Defendant and encompasses the LLC's actions by and through its agents, directors, officers, managers, supervisors, and employees.

8. Unless otherwise by way of right, Plaintiff will seek leave of this Court to amend this Complaint to allege the true names and capacities of the DOE INDIVIDUAL and ROE CORPORATION Defendants when the true names of the DOE INDIVIDUAL and ROE CORPORATION Defendants are ascertained.

9. The amount in controversy in this case is in excess of $15,000.00 or the minimum jurisdictional limit of this Court whichever is greater.

## FACTS COMMON TO ALL CLAIMS

10. Defendant, as an employer in Nevada, is required to comply with all state and federal statutes.

11. Plaintiff was employed full-time by Defendant as an Endoscopy Technician from November 10, 2010 until her termination by Defendant on or about April 26, 2019. Plaintiff worked more than 1250 hours each year preceding the events described herein.

12. At the time of Plaintiff's termination by Defendant, Plaintiff's income included an hourly wage of $39.98 for approximate annual earnings of at least $ 83,094.43. Plaintiff was also entitled to benefits of employment including, but not limited to, frequent overtime and fringe benefits.

13. Plaintiff's Reporting Managers were Heidi Holley, Director Surgical Services, and Victoria Purpura, Nurse Supervisor for Endoscopy.

14. On or about November 9, 2017, Plaintiff requested leave under the Family and Medical Leave Act (herein "FMLA") for her own serious health condition. That leave was requested to begin on November 17, 2017 through December 29, 2017.

15. Before the need for Plaintiff's medical leave for her own serious health condition arose, Plaintiff had a one week vacation scheduled during that time frame. When Plaintiff's need for the medical leave arose she immediately informed her then supervisor, Tiffany Shanks, of her need for medical leave and asked to have her vacation time ne converted to leave under the FMLA. Ms. Shanks informed Plaintiff it was not possible because her vacation had been scheduled for a long time.

16. Plaintiff was subsequently informed that her vacation time could be designated as leave under the FMLA. Plaintiff submitted the medical certification required and on or about November 22, 2017 was granted her FMLA leave.

3

17. That same request for FMLA leave included that Plaintiff needed intermittent FMLA leave after the one-month of continuous leave. However, that portion of the request was not granted until May 14, 2018. The intermittent portion of the FMLA leave was back dated to begin March 6, 2018 through November 13, 2018.

18. On May 6, 2018, Plaintiff filed a formal complaint against her supervisor, Victoria Purpura, for Ms. Purpura's failure to follow infection control protocols. Failing to follow such protocols endangers patient safety.

19. On May 10, 2018, Plaintiff suffered an industrial accident and filed a valid worker's compensation claim. Plaintiff was immediately released to full-duty.

20. On May 11, 2018, Defendant issued Plaintiff a verbal warning for a trivial incident involving a soap dispenser that in the normal course of practice would have simply been corrected with no disciplinary action asserted. This write-up began what in time would become a line of write-ups against Plaintiff after she informed Defendant of her need for leave under the FMLA and her industrial injury. The write-ups were false and pretextual in light of the history, facts, and circumstances which show that the real reason for Plaintiff's termination was retaliation for her engaging in protected activity and opposition to Defendant's violations of the FMLA. In the alternative the actions demonstrate Defendant's retaliation against Plaintiff for filing a valid workers' compensation claim.

21. On May 24, 2018, Plaintiff was granted intermittent leave under the FMLA for the request she submitted after her industrial accident so she could receive therapy three times a week for a period of six weeks. The leave was granted from May 11, 2018 through November 10, 2018; however, Defendant denied Plaintiff's request to not be placed off on-call status for the months of May and June 2018 so she could attend therapy.

22. On or about November 4, 2018, Plaintiff request leave under the FMLA for her own serious health. On November 19, 2018, Plaintiff's requested was granted. That leave was set to expire on March 5, 2019.

4

23. On November 16, 2018, Plaintiff requested time to complete Health stream courses that had to be complete by the end of November. She made that request to Ms. Purpura. Ms. Purpura told Plaintiff she could have one-hour to complete the training. When it became apparent to Plaintiff she could not finish in the one hour timeframe, she asked the OR Charge Nurse for additional time. On November 19, 2018, Ms. Purpura told Plaintiff she could do her health stream after lunch.

24. On November 20, 2018, Ms. Holley issued Plaintiff a written warning for insubordination for asking for additional time on November 16, 2018 to complete her Health stream courses. This write-up against Plaintiff for simply requesting additional time was pretext so Defendant could build a case against her to terminate her employment.

25. On November 26, 2018, Plaintiff called Ms. Holley and informed her she was going out on continuous FMLA leave. Thereafter, Ms. Holley discussed Plaintiff's FMLA leave with other employees, including Ms. Purpura, and made it well known she was tired of Plaintiff taking that leave.

26. Plaintiff returned to work on February 5, 2019, but was not placed back into her position in the Endoscopy Department, but sent to the Sterile Processing Department (herein "SPD"). The work in SPD differs significantly to the work in the Endoscopy Department including, among other things, being more physically demanding. Between her return on February 5, 2019, and her termination on April 26, 2019, Plaintiff was sent back and forth between departments even when there were cases in the Endoscopy Department.

27. On February 6, 2019, Plaintiff attempted to communicate with Ms. Purpura about her assignment and other administrative tasks in person and via text, Ms. Purpura refused to communicate with Plaintiff on any level. Communication with a supervisor is of vital importance in any job, but especially true in a medical setting where the well-being and lives of patients hang in the balance.

28. On February 11, 2019, Ms. Purpura told Plaintiff to go home or to go to SPD even though there were cases in the Endoscopy Department.

5

29. On February 12, 2019, Plaintiff made a complaint to Defendant's Ethics Hotline about the treatment she was receiving. On February 13, 2019, Plaintiff met with Stephanie Miller, Vice President of Operations and Ethics and Compliance, and Ms. Holley. Plaintiff explained to Ms. Miller and Ms. Holley the treatment Ms. Purpura was subjecting her to including showing them the unanswered text messages.

30. Between February 14, 2019, and her termination on April 26, 2019, Plaintiff was continuing subjected to underserved criticism and verbal reprimands, assignments outside her job in SPD when there were cases in the Endoscopy Department, as well as refusing and failing to communicate with Plaintiff including, but not limited to occurrences that potentially could have harmed patients. In addition, Plaintiff was being sent home early and being refused assignments which affected her ability to earn money.

31. During the same timeframe, other of Defendant's employees told Plaintiff that Defendant was investigating her FMLA leave and warned Plaintiff that they were looking for any reaons to terminate her employment.

32. On April 15, 2019, Plaintiff had cases in the Endoscopy Department which concluded about 11:30 a.m. At that time, Ms. Purpura told another employee to go to lunch, but did not allow Plaintiff to go to lunch. Plaintiff texted Ms. Purpura at 11:43 about going to lunch. Ms. Purpura did not respond. When Ms. Purpura informed another employee that she was unable to get ahold of Ms. Purpura, that employee texted Ms. Purpura who responded immediately and came to see the other employee.

33. Ms. Purpura informed Plaintiff that she needed to set up the procedure that was scheduled to being at 1:00 p.m. While setting up that procedure, Plaintiff was called to assist a doctor performing another procedure. After the procedure, Ms. Purpura cornered Plaintiff and accused her of being gone for two hours to which Plaintiff explained what had occurred and that it had not been two hours. Plaintiff also told Ms. Purpura that she had tried to text, but got no response.

34. Plaintiff then did another procedure and while she was cleaning up was told she better leave on time or she might get in trouble. Plaintiff expressed concern about the amount of work to still be

6

completed including cleaning scopes, to which she was told her partner could finish up. Before leaving, Plaintiff placed scopes used in that mornings procedures in the cleaning, disinfecting, and sterilization unit and clocked out.

35. Plaintiff, working on-call that day, was scheduled to return two hours later. When Plaintiff returned, Ms. Purpura yelled and screamed at Plaintiff about the scopes being left in the cleaning, disinfecting, and sterilization unit. Ms. Purpura was so brutal with Plaintiff that Plaintiff became experiencing physical discomfort and asked Ms. Purpura if she could get her medicine. Ms. Purpura said no. That exchange took place in front a physician.

36. During the next procedure, performed by the physician who had witnessed Ms. Purpura's brutal attack on Plaintiff, Plaintiff asked Ms. Purpura for help several times. Ms. Purpura refused to help Plaintiff. Ms. Purpura also refused to get Plaintiff medications she knew the physician would need.

37. Plaintiff was given a written warning for not removing the scopes from cleaning, disinfecting, and sterilization unit even though she had been told to clock out and that her partner could complete the task. Because Plaintiff exercised her rights under the FMLA, Defendant intentionally manipulated the situation to set Plaintiff up for so they could write her up and terminated her employment. This is pretext.

38. On April 22, 2019, Plaintiff was written up and targeted for termination as the result of an incident occurring on April 19, 2019, again with Ms. Purpura. On that date, Plaintiff and Ms. Purpura had six cases beginning at 1:00 p.m. Ms. Purpura was rushed and was putting patients in rooms that had no scopes ready. Ms. Purpura was so rushed that she ignored safety protocols. Plaintiff knew scopes needed to be washed and informed Ms. Purpura. While Plaintiff was washing scopes, Ms. Purpura put another patient in a room. The patient was ready for the procedure and Plaintiff was directed to go do the case. Plaintiff left an unprocessed scope on a cart. After the procedure, Plaintiff processed the scope. Ms. Purpura was aware Plaintiff was cleaning scopes and knew that Plaintiff had to do the subsequent procedure and yet the write-up was issued. Because

7

Plaintiff exercised her rights under the FMLA, Defendant intentionally manipulated the situation to set Plaintiff up for so they could write her up and terminated her employment. This is pretext.

## FIRST CAUSE OF ACTION:

## INTERFERENCE IN VIOLATION OF THE FAMILY MEDICAL LEAVE ACT

39. Plaintiff repeats and re-alleges each and every pertinent allegation contained in and every other pertinent paragraph contained in this Complaint, as if set forth fully herein.

40. Defendants, and each of them, operate in interstate commerce and, upon information and belief, have over 50 employees within a 75 mile radius of the location where Plaintiff was employed in Clark County, Nevada. Therefore, Defendants are a "covered employer," as defined at 29 U.S.C. §2611(4), under the Family and Medical Leave Act 29 U.S.C. §§2611-2654 and subject to the and subject to all provisions stated therein.

41. As a "covered employer" under the FMLA, Defendants are required to offer any "eligible employee," as defined at 29 U.S.C. §2611(2), up to 12 weeks of leave for absence "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee."

42. Plaintiff was an "eligible employee," entitled to the protections of the FMLA having worked for Defendants over 1250 hours during the preceding 12 months.

43. Plaintiff was qualified to obtain FMLA in that she had a serious health condition.

44. Plaintiff provided Defendants notice of her need for time off by furnishing a doctor's certification such that Defendants received sufficient notice to trigger its responsibility to provide leave under the FMLA.

45. Plaintiff was terminated on or about April 26, 2019, after engaging in the protected activity. Defendants' discharge of Plaintiff was in retaliation for, or for a discriminatory purpose, and as a result of Plaintiff's exercise of her rights under the FMLA.

8

46. By taking the adverse action of terminating Plaintiff's employment on or about April 26, 2019, Defendants violated 29 U.S.C. §2615(a)(1) by unlawfully interfering with, denying or restraining Plaintiff's right to medical leave under the FMLA.

47. Plaintiff's taking of FMLA-protected leave constituted a negative factor in Defendants' decision to terminate her employment.

48. Defendants' violations of the FMLA were willful and without justification.

49. Defendants' acts were done with malice and oppression and with Defendants' conscious disregard for the rights of the Plaintiff and with a certainty of knowledge that Plaintiff would be injured by Defendants' acts in violation of the FMLA.

50. Defendants are liable to Plaintiff for violating her rights under the FMLA.

51. Plaintiff has been damaged by an amount in excess of $15,000.00.

52. Plaintiff is entitled to all remedies available under the FMLA and hereby claims entitlement to all appropriate remedies pursuant to 29 U.S.C. §2617 (a)(1)(A) and (B) including, but limited to, the following: money damages for lost wages and benefits and any other actual money damages caused by Defendants' violation of the FMLA liquidated damages as provided for under the FMLA; interest as provided for under the FMLA and other law; equitable and/or injunctive relief including employment or reinstatement, and/or promotion as provided for by the FMLA and/or front pay in lieu of employment or reinstatement as provided for by the FMLA.

53. Plaintiff is entitled to recover reasonable attorney fees pursuant to pursuant to 29 U.S.C. §2617(a)(3) for having to incur costs associated with the exercise of her legal rights and remedies through this action.

## SECOND CAUSE OF ACTION:

### RETALIATION/DISCRIMINATION IN VIOLATION OF THE FAMILY MEDICAL LEAVE ACT

54. Plaintiff repeats and re-alleges each and every pertinent allegation contained in and every other pertinent paragraph contained in this Complaint, as if set forth fully herein.

9

55. Defendants, and each of them, operate in interstate commerce and, upon information and belief, have over 50 employees within a 75 mile radius of the location where Plaintiff was employed in Clark County, Nevada. Therefore, Defendants are a "covered employer," as defined at 29 U.S.C. §2611(4), under the Family and Medical Leave Act 29 U.S.C. §§2611-2654 and subject to the and subject to all provisions stated therein.

56. As a "covered employer" under the FMLA, Defendants are required to offer any "eligible employee," as defined at 29 U.S.C. §2611(2), up to 12 weeks of leave for absence "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee."

57. Plaintiff was an "eligible employee," entitled to the protections of the FMLA having worked for Defendants over 1250 hours during the preceding 12 months.

58. Plaintiff was qualified to obtain FMLA in that she had a serious health condition.

59. Plaintiff provided Defendants notice of her need for time off by furnishing a doctor's certification to Defendants such that Defendants received sufficient notice to trigger its responsibility to provide leave under the FMLA.

60. Plaintiff was terminated on or about April 26, 2019, after engaging in the protected activity. Defendants' discharge of Plaintiff was in retaliation for, or for a discriminatory purpose, and as a result of Plaintiff's exercise of her rights under the FMLA.

61. By taking the adverse action of terminating Plaintiff's employment on or about April 26, 2019, Defendants violated 29 U.S.C. §2615(a)(2) by unlawfully retaliating and/or discriminating against Plaintiff and her right to medical leave under the FMLA.

62. Plaintiff's taking of FMLA-protected leave constituted a negative factor in Defendants' decision to terminate her employment.

63. Defendants' violations of the FMLA were willful and without justification.

64. Defendants' acts were done with malice and oppression and with Defendants' conscious disregard for the rights of the Plaintiff and with a certainty of knowledge that Plaintiff would be injured by Defendants' acts in violation of the FMLA.

65. Defendants are liable to Plaintiff for violating her rights under the FMLA.

66. Plaintiff has been damaged by an amount in excess of $15,000.00.

67. Plaintiff is entitled to all remedies available under the FMLA and hereby claims entitlement to all appropriate remedies pursuant to 29 U.S.C. §2617 (a)(1)(A) and (B) including, but limited to, the following: money damages for lost wages and benefits and any other actual money damages caused by Defendants' violation of the FMLA liquidated damages as provided for under the FMLA; interest as provided for under the FMLA and other law; equitable and/or injunctive relief including employment or reinstatement, and/or promotion as provided for by the FMLA and/or front pay in lieu of employment or reinstatement as provided for by the FMLA.

68. Plaintiff is entitled to recover reasonable attorney fees pursuant to pursuant to 29 U.S.C. §2617(a)(3) for having to incur costs associated with the exercise of her legal rights and remedies through this action.

### THIRD CAUSE OF ACTION:

### RETALIATORY DISCHARGE IN VIOLATION OF PUBLIC POLICY-WORKERS' COMPENSATION RETALIATION

69. Plaintiff repeats and re-alleges each and every pertinent allegation contained in and every other pertinent paragraph contained in this Complaint, as if set forth fully herein.

70. Defendant terminated Plaintiff's employment in retaliation for her being injured on the job and his filing of a valid workers' compensation claim and, thus, exercising her rights under the Nevada Industrial Insurance Act.

71. Defendant termination of Plaintiff's employment was in violation of strong public policy of the state of Nevada.

72. Plaintiff suffered mental anguish and emotional distress as a direct and proximate result of Defendant's actions.

73. Plaintiff has suffered and will suffer lost wages and/or benefits as a direct and proximate result of the actions of Defendant.

11

74. The actions of Defendant were willful, malicious, fraudulent, or oppressive, and calculated to discourage Plaintiff and other of Defendant's employees from pursuing their rights under Nevada law. Defendant should be subjected to Punitive and Exemplary damages to deter future conduct of this sort.

75. Plaintiff should be reinstated to her position with all wages, benefits, and seniority restored as though the unlawful and tortious termination had never occurred.

76. Plaintiff has been required to hire an attorney and expend fees and costs to pursue his rights through this action.

## DEMAND FOR JUDGMENT FOR RELIEF

**WHEREFORE**, Plaintiff expressly reserves the right to amend his Complaint at or before the time of trial of the action herein to include all items of damages not yet ascertained, and demands all applicable relief including, but not limited to:

A. All applicable relief provided for provided for under the Family and Medical Leave Act and under Nevada common law including, but not limited, to the following:
   1. Money damages in excess of $15,000.00;
   2. Economic damages including, but not limited to, lost wages and benefits of employment;
   3. Extraordinary and equitable relief in the form of an order of reinstatement without loss of position, seniority and benefits, or in the alternative for an appropriate amount of front pay in lieu of reinstatement;
   4. Liquidated damages pursuant to the Family Medical Leave Act;
   5. Nominal damages;
   6. Pre-judgment and post-judgment interest on the amounts awarded at the prevailing legal rate;
   7. For an additional amount to account for any increased taxes Plaintiff may be called upon to pay in relation to any award made herein;

8. Reasonable attorneys' fees, reasonable expert witness fees, and other costs of the action pursuant to federal and state statute, agreement, or court rule;

B. A trial by jury on all issues that may be tried to a jury; and/or

C. For such other and further relief as the Court may deem just and proper.

Dated this 9th day of November, 2019

---

JAMES P. KEMP, ESQ.
Nevada Bar No.: 6375
VICTORIA L. NEAL, ESQ.
Nevada Bar No.: 13382
KEMP & KEMP
7435 W. Azure Drive, Ste 110
Las Vegas, NV 89130

*Attorneys for Plaintiff*
*Marilyn Misa-White*

Electronically Filed
11/9/2019 7:09 PM
Steven D. Grierson
CLERK OF THE COURT

JAMES P. KEMP, ESQ.
Nevada Bar No.: 6375
VICTORIA L. NEAL, ESQ.
Nevada Bar No.: 13382
KEMP & KEMP
7435 W. Azure Drive, Ste 110
Las Vegas, NV 89130
702-258-1183 ph./702-258-6983 fax
jp@kemp-attorneys.com
vneal@kemp-attorneys.com

*Attorneys for Plaintiff*
*Marilyn Misa-White*

CASE NO: A-19-805177-C
Department 24

**DISTRICT COURT**
**CLARK COUNTY, NEVADA**
\*\*\*

MARILYN MISA-WHITE,

        Plaintiff,

vs.

SOUTHERN HILLS MEDICAL CENTER, LLC, a Nevada Limited Liability Company; Does I-X; Roe Corporations I-X,

        Defendants.

Case No.:
Dept. No.:

**INITIAL APPEARANCE**
**FEE DISCLOSURE**

    Pursuant to NRS Chapter 19, as amended by Senate Bill 106, filing fees are submitted for parties appearing in the above entitled action as indicated below:

    MARILYN MISA-WHITE, Plaintiff        $270.00
    TOTAL REMITTED:        <u>$270.00</u>

Plaintiff demands a jury trial.

DATED November 9, 2019

                    <u>/s/Victoria L. Neal</u>
                    VICTORIA L. NEAL, ESQ.
                    Nevada Bar No. 13382
                    Attorney for Plaintiff

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. AZURE DRIVE, SUITE 110
LAS VEGAS, NEVADA 89130
TEL. (702) 258-1183 ♦ FAX (702) 258-6983

1